ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------X
SANTIAGO GOMEZ
                    Plaintiff,        :

                                      :

              v.              .       :

SUPERINTENDENT OF AUBURN C.F.         :
HAROLD D. GRAHAM, CORRECTIONAL
OFFICER D. MURRAY,                    :

                    Defendants.       :
--------------------------------X

42 U.S.C. § 1983

VERIFIED COMPLAINT

JURY TRIAL DEMANDED

9:14-CV-201



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
FEB 2 7 2014
AT____ O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

Plaintiff Pro-Se states as follows:

PRELIMINARY STATEMENT

1.  This is a combined Civil Rights and negligence claim aris-
ing while plaintiff was housed at Auburn Correctional Facility
as a New York State Prisoner.  The above defendants deprived plain-
tiff of his constitutional rights guaranteed by the First, Eighth,
Fourth, and Fourteenth Amendments to the U.S. Const; Defendants
intentionally caused unreasonable searches of plaintiff's visitors
and retaliated against plaintiff for the filing of complaints.
Defendants further intentionally lost plaintiff's property and
wrongfully confined plaintiff as retaliation without Due Process.
During this wrongful confinement, Defendants denied Plaintiff living
necessities such as toilet paper, and beverages with meals.  Plain-
tiff asserts that HAROLD D. GRAHAM has maintained a practice of
unreasonable searches of female visitors while on Notice and still,
consciously chose to ignore it which effectively ratified the mis-
conduct.  As a result of the mentioned Plaintiff was deprived of
his liberty without due process and removed from required

(1)

Programs to meet the requirements of Limited Credit Time Allowance which allows plaintiff to receive a six month reduction of his sentence for Out-Standing Programming and a denial of plaintiff Family Reunion Program participation Application. Further this behavior Deterred Several of Plaintiff's family members from Visiting to avoid unreasonable searches of teenagers.

JURISDICTION AND VENUE

2. This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over claims arising from: Civil Rights Act 1871; 42 U.S.C. § 1983; and the Eighth, First, Fourth and Fourteenth Amendments of the U.S. Constitution.

3. On or about December 29, 2013, Plaintiff served a Pro-Se notice of claim regarding the Negligence Claim for loss of Property more than 30 days have elapsed since the filing of the claim and the underlying claims have not been settled or otherwise disposed.

4. Pursuant to 28 U.S.C. § 1391 (b)(2), the venue is proper in the NORTHERN District of New York. The judicial District in which a substantial part of the events or omissions giving rise to the claim occurred.

5. This action falls within one or more of the exceptions set forth in CPLR § 1602.

PARTIES

6.  Plaintiff SANTIAGO GOMEZ was at all relevant times, a citizen of the United States of America and a Convicted prisoner of the New York State Department of Corrections and Community Supervision.

7.  Defendant HAROLD D. GRAHAM, was at all relevant times responsible for policies, customs and Practices in Auburn Correctional Facility.

8.  Defendant Superintendent Harold D. Graham, was at all relevant times the Superintendent of Auburn Correctional Facility, with the Authority to correct any wrongful/Civil Rights violations committed by Correctional Staff.

9.  Defendant D. Murray, was at all relevant times employed as a correctional officer at Auburn Correctional Facility assigned to the Law Library entrance frisk area/Library/Gym/Entrance.

10.  All defendants are sued in their Individual Capacities.

ALLEGATIONS SPECIFIC TO Mr. GOMEZ

11. On or around May 29, 2013, plaintiff arrived at Auburn Correctional Facility (hereinafter ACF). On or around May 29, 2013 Plaintiff received a visit from His wife, Sonia L. Gomez. During this visit, Mrs. Gomez advised Plaintiff that she felt embarrassed and humiliated due to the manner in which Correctional staff frisked her prior to entering the visit room. Mrs. Gomez informed plaintiff that she was Directed to walk through a metal detector and her bra set off the detector, she was then directed to go into the restroom and remove her bra and place it in a net bag that a

(3)

male correctional officer handed her.  Mrs. Gomez complied.  Upon
Mrs. Gomez returning from the restroom, she handed the bag to a male
officer. .The officer then removed Mrs. Gomez's bra from the net
bag and began to inspect it.  Mrs. Gomez was then instructed to walk
through the Metal Detector again.  When Mrs.Gomez walked through
the detector, she crossed her arms to prevent Male officers and
other visitors from seeing her breasts.  The male officer informed
Mrs. Gomez that she could not cross her arms and that they must
remain at her sides.  Mrs. Gomez complied, whereas her breasts were
exposed through her shirt.  In summer month's, Mrs. Gomez wears
light clothing.


    12.  On or around May 29, 2013, Mrs. Gomez observed this prac-
tice being done to all visitors (female); Senior citizens and teen-
age girls.

    13.  This search practice has Occurred to Mrs. Gomez During
every visit with Plaintiff at ACF from May 29, 2013 through 2014.

    14.  On information and belief this practice of searching female
visitors and forcing them to remove their bra is done by correctional
officers for sexual gratification and to deter family from visi-
ting prisoners by causing mental Anguish.

    15.  On July 2, 2013, Mrs. Gomez filed a Complaint with The
State of New York Department of Corrections and Community Supervision
regarding the search practice at ACF.  Mrs. Gomez did not receive
a reply.  Failure to investigate this misconduct effectively ratified
it.

    16.  On information and belief, this Practice at ACF has been
in existence for over 25 years. In all New York State Prisons,
Visit frisk areas. Plaintiff filed a Grievance concerning this search
policy/Practice on August 24, 2013, with Defendant Graham. **A grievance
was filed with Auburn I.G.R.C. regarding these searches.** Feb 9,2014

17.  On July 25, 2013, Plaintiff, while at ACF, was called to the ACF Draft room and told that he has to pack his property for a court Appearance at Westchester County Court.

18.  On July 25, 2013, Plaintiff packed his personal property which was to remain at ACF during his court trip.  Plaintiff, on this date elected to bring legal documents for his court trip, which consisted of 160- pages of FOIL records.

19.  On July 27, 2013, Plaintiff was transferred to Downstate C.F. (Hereinafter DNS).  Plaintiff, while at DNS was not called to the DNS draft area until July 31, 2013, well after Plaintiff went to his court hearing.

20.  On information and belief, Plaintiff was supposed to be issued his property upon his arrival at DNS on July 25, 2013.

21.  On July 31, 2013, Plaintiff arrived at DNS draft room to obtain his out to court bag, which contained plaintiff's court papers 160-pages of F.O.I.L. documents.  A Female Officer, Smith, was hand-ling Plaintiff's property.  When Plaintiff arrived, his court bag was opened outside of his presence.  Officer Smith was very agitated and informed Plaintiff that his belongings were not allowed in DNS.  She advised Plaintiff that the property could be mailed home or dis-posed of.  Plaintiff refused both options and requested his bag be shipped back to ACF.  Officer Smith stated, "Have it your way. DNS has a habit of losing property."  Plaintiff was instructed to sign form I-64 and dismissed back to his housing unit.

22.  On information and belief, Plaintiff's property bag was supposed to be opened in his presence/sealed in his presence.

23.  On or around July 31, 2013, Plaintiff filed a Grievance/complaint with DNS Superintendent  ADA PEREZ, regarding the delay in receiving his court property and several hazardous living condi-tions in the reception houses.

24.  On August 5, 2013, Plaintiff was returned to ACF.

25.  On August 6, 2013, Plaintiff was called to ACF draft room to pick up his personal property and his out to court bag.  While at ACF Draft room, Plaintiff and Officer returning Plaintiff's property opened Plaintiff's court bag to ensure documents were present whereas the officer and Plaintiff took notice that his legal papers were missing in transit.  Plaintiff then signed the I-64.

26.  Plaintiff file a Claim with ACF regarding his lost legal papers.  This claim was denied by Superintendent Harold D. Graham.

27.  On or around September or October 2013, Plaintiff, while at ACF, Plaintiff showed up to the Law Library entrance for a Law Library call-out, whereas when Plaintiff entered as done routinely walked through the metal detector. Then D. Murray became agitated and speaking in a hostile manner told Plaintiff in substance, "Why haven't you informed me where you are going?"  "If you don't do it my way, I'll put a weapon on you and if you and if you tell, I'll have another officer do it."  Defendant D. Murray directed more profanities towards plaintiff, plaintiff proceeded to the Law Library.

28.  On or around September or October, 2013, Plaintiff filed a Grievance with Deputy of Security Jones, concerning the Threats of Defendant D. Murray.

29.  On or around September 2013, Plaintiff was removed from his cell, E-8-20, by Sergeant Hai for an interview regarding the Grievance Plaintiff filed with Harold D. Graham.  Plaintiff explained the incident in detail to Sergeant Hai.  Sgt. Hai informed Plaintiff that he has worked for the department for over 25 years and he would speak with Defendant D. Murrary and assured Plaintiff that he would not be set-up and requested Plaintiff to sign off on the grievance and he'll write it up as a misunderstanding.  Plaintiff then agreed to sign off on the complaint.  Sergeant Hai then asked Plaintiff to sign what he called a "GOOD GUY FORM" refusing protection/to file charges.

30.  On or about the ending of October through November 2013, Plaintiff and Defendant D. Murray had no Further incidents.

31.  On or around December, 2013, Plaintiff was denied access to the Law Library by Defendant D. Murray on numerous occasions claiming the Law Library was closed for walk-ins or denied Plaintiff access to the facility General Library claiming the area was closed, but subsequently allowed other inmates access to the same area. **Plaintiff filed a grievance regarding this.**

32.  On or around December 20, Defendant Murray while working the Law Library entrance saw Plaintiff on line waiting his turn to enter the Law Library, came and screamed towards Plaintiff, "WHAT THE FUCK DO YOU WANT EVERYTHING IS CLOSED EXCEPT SHOWERS." Plaintiff saw other inmates on line enter the building and gain access to the same area that Defendant D. Murray claimed was closed.

33.  Plaintiff was denied access to the Law Library during walk-ins or access to the Library approximately 13-times which he claimed was closed.

34.  Defendant D. Murray acting in concert with Officer French and Kirkwood created an atmosphere of despair and hostility in attempt to deter Plaintiff from entering the Law Library/Library/ Gym Building.

35.  On December 26, 2013, Plaintiff entered the Frisk area of the General Library in hopes of receiving notary for a Notice of Claim in connection with Plaintiff's lost legal materials.

36.  Defendant D. Murray was on post at the frisk station. Plaintiff informed him that he need to enter the library for

(7)

notary and he wanted to go into the Law Library on a walk-in to photo-copy the notarized document. Defendant D. Murray told plaintiff, "you're lucky you're here. Only Library; MOVE!" Plaintiff entered the library and attempted to get notary from civilian Brenda Walsh, but Plaintiff forgot his documents. Plaintiff, in compliance with rules, sat down at a table and began to sort through his documents. Sometime after, arrived inmate Edwin Cruz, a spanish speaking inmate whom Plaintiff had permission from Deputy Superintendent Thomas to assist in his civil matter due to his language barrier. (Further, Plaintiff was authorized by the Law Library officer to assist Cruz).

37. Defendant D. Murray arrived at the table Plaintiff was sitting at and directed inmate Cruz to get up and follow him. Inmate Cruz was removed from the building and sent into the yard.

38. Inmate Cruz, left his legal papers on the table that he'd just received from the NYS attorney general in hopes of Plaintiff translating the instrument.

39. Upon the Library closing, Plaintiff picked up Cruz's legal papers and proceeded to leave the library, when Defendant D. Murray stopped Plaintiff and told him to place his hands on the glass window for a search of his person. Plaintiff complied.

40. Defendant, D. Murray was aggressively searching Plaintiff by yanking on his clothing and pulling.

41. During this search arrived Officer French also assigned to work the frisk area whereas officer French entered and stated, "Isn't this the Dick Head that grieved?" Defendant D. Murray replied, "Yeah, you know where that went; the garbage!" Officer French stated, "Lock him up, it's our turn." Plaintiff was taken to his cell by Officer French.

42. Plaintiff had property inside the lockers outside the library for inmate use. Plaintiff requested to retain his property from the locker. Officer French refused. Plaintiff lost his personal towel that his wife purchased, shower slippers, Old Spice deodorant, socks, boxers, t-shirt, shampoo, conditioner, all that remained inside said locker.

43. On December 27, 2013, Plaintiff received a misbehavior report charging 113.27, Exchange of Legal Work, 180.17, Provide Legal Assistance, 107.10, Interference, and 106.10, Direct order.

44. On December 30, Dep. Jones commenced a Tier III hearing against Plaintiff and adjourned the hearing.

45. On January 13, 2014, Dep. Jones continued Plaintiff hearing and multiple witnesses testified. Dep. Jones continued this hearing although the time limitation expired to complete the hearing without obtaining an extension by the commissioner as outlined in 7 NYCRR Chapter 5 and Directive 4932 (a)(b), Timeliness. Plaintiff remained confined 23 days unlawfully.

46. During Plaintiff's confinement at A-Block Plaintiff never received a beverage with his lunch or dinner meal.

47. On information and belief, Plaintiff was supposed to be issued juice as is always issued to the entire inmate population.

48. On December 26, 2013, Plaintiff was not issued a dinner meal.

49. On information and belief, Plaintiff was supposed to be issued a keeplock meal. This occurs to all keeplocked inmates. Plaintiff filed a grievance regarding this behavior.

50.  On January 10, 2013, Plaintiff, while confined to his cell
was not issued tissue as required by outlined procedures.  Plain-
tiff on commissary restriction due to confinement had no other
avenue to receive bathroom tissue and was forced to clean himself
with damp computer paper on four occasions.  Plaintiff requested
bathroom tissue to Officer Lane, assigned to 2-Company on numerous
occasions to no avail.  Plaintiff filed a grievance concerning this
behavior.

51.  Plaintiff, while confined to his cell was denied recreation
for the entire time that he was keeplocked, although he desired to
engage in recreation.  Plaintiff filed a grievance concerning
this.

52.  On December 26, 2013, Plaintiff filed a grievance with
the Grievance office at ACF. Plaintiff advised of Defendant D.
Murray retaliating against plaintiff for the filing of his initial
complaint.  Further, Defendant D. Murray falsified a misbehavior
report against Plaintiff.  No response was received. A complaint and
a copy of this grievance was also served on Defendant Graham that
same day of December 26,2013 no response received . Plaintiff attempted
to appeal numerous times to no avail,or guidance provided.

53.  As a direct and proximate result of the Defendants'
misconduct Mr.Gomez has or will suffer as Follows:

                        DAMAGES

        a.  Violation of his rights as guaranteed by the
            Eighth, Fourth and Fourteenth Amendments to
            the U.S. Const.

        b.  Needless, conscious pain and suffering;
        c.  Severe, emotional trauma and distress;
        d.  Loss of good time credit;
        e.  Mental anguish, pain and suffering;
        f.  Loss of personal property;
        g.  Indirect loss of family visits.

                        (10)

COUNT I

§ 1983 CLAIMS OF ILLEGAL SEARCH
AGAINST
Harold D. Graham.

54. Officials of New York State and or Superintendent Harold D. Graham with policy making authority for Auburn Correctional Facility was aware of the Illegal Search Practices Implemented at ACF and made a specific decision to not correct the widespread use of Illegal Searches of Plaintiff's visitors and or other Inmates family and friends.

55. Policy Makers Of The State Of New York Department Of Corrections were aware of their subordinates Conducting Illegal Searches on Female visitors at ACF and consciously chose to ignore it, which effectively ratified the misconduct.

56. By reason of the foregoing, Mr. Gomez was damaged.

COUNT II
§ 1983 CLAIMS OF RETALIATION AGAINST
D . Murray

57. Mr. Gomez hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

58. By Defendant D. Murray's conduct and under color of law said Defendant deprived Mr. Gomez of his right not to be retaliated against for petitioning the government for redress by filing of Grievances.

(11)

COUNT III

§ 1983 DUE PROCESS CLAIM AGAINST

HAROLD D. GRAHAM, D. MURRAY

59.  Mr. Gomez hereby incorporates and references all of the foregoing paragraphs and further alleges as Follows:

60.  Defendant Harold D. Graham was at all times relevant to this action the superintendent of ACF and had the authority to restore Plaintiff to the status he enjoyed prior to the filing of said False Misbehavior report, but chose to continue confinement, even after the allotted amount of time to complete said hearing expired he still continued the confinement of plaintiff. Further, Defendants denied plaintiff recreation as mandated by state law.

COUNT IV

§ 1983 CLAIM OF CRUEL UNUSUAL PUNISHMENT

Against Harold D. Graham, D. Murray.

61.  Mr. Gomez hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

62.  Mr. Gomez, an inmate at ACF in the care and custody of the state of New York and Superintendent H.D. Graham, was denied life's necessities such at toilet paper, and beverages with his meals without reason, breached his duty to care for plaintiff after being informed of the misconduct.

63.  Mr. Gomez informed the state of New York Department of Corrections and Community Supervision and Harold Graham in writing Plaintiff further spoke to Defendant Graham personally regarding his grievance regarding retaliation by defendant Murray and unreasonable searches occurring to his wife. Defendant Graham stated "Nothing's going to change, I'm busy with all the violence here. When I get around to it, I'll check it out."  This occurred on or around January 15, 2014 **and Feb. 19, 2014.**

Further, Defendant Graham holds daily meetings with senior members of his staff, including IGRC Supervisor, C. Parmiter, where members inform Graham of previous days events, whereas Gomez's grievances and complaints were discussed on numerous occasions.

### COUNT V
### FAILURE TO PROTECT PROPERTY CLAIM
### EIGHTH AMENDMENT AGAINST HAROLD D. GRAHAM
### D.MURRAY

64. Mr. Gomez hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

65. Said Defendant was at all times liable for plaintiffs property during his court trip. Further, Defendant had a duty to protect plaintiffs property during transportation.

66. As a result Mr. Gomez suffered the damages described above.

WHEREFORE, Mr. Gomez requests the following relief:

a. Declaratory judgment that Superintendent Harold D. Graham created or maintained a policy, custom or practice of forcing Female Visitors at ACF to remove their bra and hand it to a male correctional officer inside of a net bag for inspection and Forcing Female Visitors to walk through a metal detector braless forcing them to expose their nipples through their shirt for correctional staff and the other visitors to see;

b. Declaratory judgment that Mr. Gomez's rights under the First, Eighth, Fourth, and Fourteenth Amendments to the U.S. Constitution were violated;

c. Award Nominal damages in the amount of $2,000,000 against all defendants as a jury may determine but no less than $2,000,000;

(13)

d.  Award Compensatory damages against all defendants as a jury may determine but no less than $2,000,000;

e.  Award punitive damages against D. Murray and, Harold D. Graham as a jury may determine, but no less than $2,000,000;

f.  Award Presumed damages as a jury may determine;

g.  Award Cost and disbursement; and

h.  Grant injunctive relief stopping the practice of forcing female visitors to remove their bra's prior to entering the visit room

i.  Direct the New York State Department of Corrections and Community Supervision to expunge any and all entries relating to the misbehavior report filed against plaintiff on December 26, 2013;

j.  Direct the New York State Department of Corrections and Community supervision to place plaintiff in a program which meets the requirement of the Limited Credit Time Allowance promptly. This is being requested as INJUNCTIVE RELIEF.

k.  Such and further relief as the Court seems just and proper.

A TEMPORARY RESTRAINING ORDER PURSUANT TO Fed.R.Civ.P. Rule 65 is attached to this complaint.

## DECLARATION UNDER THE PENALTY OF PERJURY

I, SANTIAGO GOMEZ am the plaintiff in the above entitled action, and I have read the Verified Complaint, and declare under the penalty of perjury that the foregoing is true and correct under 28 U.S.C. § 1746.    Executed on:

_Feb, 24, 2014_
Dated

_Auburn, New York_
CITY/STATE

_[signature]_
PLAINTIFF SIGNATURE
SANTIAGO GOMEZ
Auburn C.F.
P.O. Box 618
Auburn, NY 13024
Din. # 13A2110

(15)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------X
SANTIAGO GOMEZ

                    Plaintiff,

         v.                                              AFFIDAVIT

HAROLD D. GRAHAM et al.,

                    Defendants.
-------------------------------X


COUNTY OF CAYUGA ) SS
STATE OF NEW YORK )


         I DARRYL BOLTON, duly sworn deposes and says:

1. I am a prisoner in custody of the New york state Department of
   Corrections and community supervision.

2. I have been in the departments custody since 2008.

3. I have been housed at Auburn Correctional Facility for the years
   of           2013,2014.

4. On or around December 20,2013 I at Auburn Correctional facility
   was on-line waiting to be frisked to enter the Law Library on
   a walkin when I observed Correctional Officer Murray exit the
   building and scream towards my cell neighbor santiago Gomez
   saying " what the fuck do you want everything is closed except
   showers" Santiago then replied Law library walkin, C.O. said no
   santiago then left the line. I then entered the Building for
   a frisk and stated I wanted    the Law Library, I was allowed
   to enter the Law Library which was in full operation.

5. On or around December 2013 I observed officer Murray refuse Santiago gomez access to the library by claiming it was closed,when in fact it was not closed, I observed officer Murray do this numerous times to Santiago Gomez.

6. On or around December 27,2013 prior to recreation Santiago Gomez asked me if i can check the inmate lockers outside of the Law library for his property, I agreed and Santiago gave me his combination lock number and described the location of the locker. I during receration inspected this area of the lockers and found a broken lock and no property.

7. I have observed correctional officers Murray,French and Kirkwood purposely harass Santiago Gomez by leaving him standing outside the Law libray and skipping him and calling other prisoners on the line although Santiago was there first. I observed santiago gomez remain on line over 30-Minutes in tempures below zero and other prisoners were granted prompt access.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT PURSUANT TO U.S.C. 28 § 1746.

DATED: AUBURN,NEW YORK  1-30-14

SWORN TO BEFORE ME THIS

30th DAY OF JANUary 2014

_____
NOTARY PUBLIC

DARRYL BOLTON DIN#

DATE OF BIRTH  6-21-85

JEFFREY SCOTT GIRVIN
NOTARY PUBLIC, STATE OF NY
01GI6127101
QUALIFIED IN CAYUGA COUNTY
COMMISSION EXPIRES 5/16/20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK,

SANTIAGO GOMEZ,

                Plaintiff,

   −vs−                              AFFIDAVIT

HAROLD D. GRAHAM, et al.,

                Defendant.,

STATE OF NEW YORK )

COUNTY OF CAYUGA ) s.s.:

      ROBERTO ESTREMERA, being duly sworn, deposes and says that:

1. The undersigned is a prisoner of the New York State Department of Corrections and Community Supervision, and is currently being held @: Auburn Correctional Facility, located @: 135 State Street, Auburn, New York 13024, since January 7, 2013.

2. Affiant has been in custody since September 14, 1999.

3. On or about December 26, 2013, while departing from the Gymnasium Affiant witnessed prisoner Santiago Gomez being searched by an officer known as "Murray".

4. An officer known as "French" then arrived and stated "j isn't this the dickhead that grieved you?"

5. Officer Murray then replied: "yeah—you know where that went; to the trash!"

6. Officer French then stated "fuck it—its our turn to write him up".

I, ROBERTO ESTREMERA, DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT PURSUANT TO 28 U.S.C. §1746.

/s/

ROBERTO ESTREMERA, #01A1295

Affiant

SUBSCRIBED AND SWORN TO BEFORE   AUBURN C.F.

ME THIS 28 DAY OF January, 2014   135 STATE STREET

/s/ David E. OH   AUBURN, NEW YORK 13024

NOTARY PUBLIC.

DAVID G. O'HARA
Notary Public, State of New York
No. 01OH6233984
Qualified in Onondaga County
Commission Expires January 3, 20__15

, SEAL.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------X
SANTIAGO GOMEZ
                    Plaintiff,

                                               AFFIDAVIT

        V.

HAROLD D. GRAHAM et al.,

                    Defendants.
-------------------------------X


COUNTY OF CAYUGA      )  SS
STATE OF NEW YORK     )


        EDWIN CRUZ, being duly sworn deposes and says:


1. I am a prisoner of The New York State Department of Corrections


2. I have been in Custody since 2004.


3. I have been Housed at Auburn Correctional Facility a New York
   state prison since 2012,2013,2014.


4. I am considered to have a intellectual capacity issue based
   on exams by the NYS Dept. Of Corrections.


5. I am a hispanic male, my primary language is spanish.I can not
   read the english language.


6. I have several Mental Health Issues due to being a victim of
   two separate assaults by Correctional officers From the NYS
   deapartment of Corrections and Community Supervision.


                            (1)

7. I have to Civil Claims pending in United States District courts of New York #(1) Western District, (2) Northern District.

8. Auburn Correctional Facility only has (1) Hispanic Inmate. Law Clerk for the entire Hispanic inmate population.

9. I can hardly recieve assistance with translation of my court documents based on the shortage of hispanic workers.

10. On November 18,2013, I spoke with Prisoner SANTIAGO GOMEZ in regards to assisting me with expressing myself and translating court replies to me, which he agreed.

11. On November 18, 2013 I applied with Deputy Superintendent Thomas and Correctional officer Vanderwerff for Inmate Assistance, Using a approved Form Signed by me and Inmate SANTIAGO GOMEZ, Further signed C.O. Vanderwerff.

12. On November 19,2013 I received my application for inmate assistance signed by Deputy Superintendent Thomas approving SANTIAGO GOMEZ to assist me with my legal work, this was approved until December 19,2013.

13. On december 19, 2013 I spoke to SANTIAGO GOMEZ advising him that I wanted to request a extension so he can continue to assist me with my legal work, whereas me and SANTIAGO GOMEZ signed and dated a Inmate assistance form requesting a extension.

14. On december 19,2013 I submitted a extension application to Correctional officer Vanderwerff LAW LIBRARY SUPERVISOR

(2)

Officer   Vanderwerff informed me that since I was applying for a extension SANTIAGO GOMEZ could continue to assist me However DEPUTY SUPERINTENDENT THOMAS APPROVES APPLICATIONS one day to the Next. Correctional Officer Vanderwerff then signed my extension application approving my request, he then photo copied the application, kept a copy and gave me two copies (1) for my records ,(1) for SANTIAGO GOMEZ.

15. On or around January 4,2014 I received a copy of my application for Superintendent Thomas indicating that my application was being denied on his behalf due to SANTIAGO GOMEZ receiving a Tier III misbehavior report for unauthorized legal work.

16. I investigated why SANTIAGO GOMEZ HAD a misbehavior report by speaking with Officer Vanderwerff and he stated I don't understand why he has a ticket,no one asked me if he had permission  to help you, something else is going on.

17. I further state that on December 26,2013 while in the Law Library for a walkin from the south yard, I left my assigned area and entered the facility General Library upon seeing  SANTIAGO GOMEZ I had recently received a reply from the NYS attorney General and the District court Western District of New york, and I needed for SANTIAGO GOMEZ to translate, Correctional officer Murray observed me leave the Law Library and sit down in the General Library, he approached me and told me to get up and Follow him, My legal papers remained on the General library table where I was sitting with SANTIAGO GOMEZ, I was removed and sent back to the south yard, I was never issued a misbehavior report for being out of place.

(3)

I EDWIN CRUZ DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT PURSUANT TO  28U.S.C.§ 1746

DATED: AUBURN NEW YORK

SWORN TO BEFORE ME THIS DA

27 ---- DAY OF _January_ 2014

_David G. O'Hara_

NOTARY PUBLIC

> DAVID G. O'HARA
> Notary Public, State of New York
> No. 01OH6233984
> Qualified in Onondaga County
> Commission Expires January 3, 20_15_
> 4of4

EDWIN CRUZ

DIN# 04A0512

DATE OF BIRTH 2-4-1970